RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Petitioner, v. TAX COURT OF PUERTO RICO, Respondent; CARMEN DEL TORO RODRÍGUEZ ET AL., Interveners.

No. 155.   Argued January 14, 1948.—Decided March 19, 1948.

*Luis Negrón Fernández, Attorney General,* and *J. Rivera Barrera, Assistant Attorney General,* for petitioner. *Damián Monserrat, Jr., Gabriel de la Haba,* and *Rafael Baragaño, Jr.,* for interveners, petitioners in the main action.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the Court.

Pursuant to the decision of this Court of May 28, 1945, in *Del Toro* v. *Tax Court,* 65 P.R.R. 58, Attorney Damián Monserrat, Jr., in his capacity as attorney-in-fact of the heirs of Fernando del Toro Saldaña, submitted to the Treasurer of Puerto Rico a sworn notification of the death of the decedent in order that the amount of the inheritance tax to be paid by the heirs should be determined. In the return filed on behalf of the heirs the estate was valued at $186,000. On February 5, 1946, the Treasurer notified the heirs that the appraisal made by him amounted to $374,731.50, and imposed on each of the heirs a tax of $18,650.72, plus interest thereon at the rate of 1 per cent monthly from May 7, 1937, until fully paid. The amount claimed by the Treasurer as interest up to February 28, 1947, on which the payment was made, was $39,539.53.

Feeling aggrieved by the liquidation of the interest made by the Treasurer, the heirs appealed to the Tax Court, after having paid the following amounts:

Total amount of the tax _____ $37,301.44
Interest from May 7, 1937, to November 21, 1941, at 1
  per cent monthly _____ 20,515.80
Interest from December 1941 to February 28, 1946, at
  6 per cent annually _____ 9,511.88

The sum remaining unpaid, since the claimants did not agree, amounts to $9,511.88, which represents the difference between the 12 per cent per annum established by § 9 of Act No. 99 of August 29, 1925, as amended by Act No. 20 of April 27, 1933, and the 6 per cent per annum fixed by § 2 of Act No. 20 of November 21, 1941.

On March 24, 1947, the Tax Court rendered a decision sustaining the complaint in all its parts. Feeling aggrieved by that decision, the Treasurer instituted the present proceeding. The four assignments set up by the petitioning Treasurer involve a single question: Did the Tax Court err in applying to this case the provisions of Act No. 20 of November 21, 1941, which amended § 9 of Act No. 99 of August 29, 1925, as amended by Act No. 20. of April 27, 1933, and in not applying the latter Act, which was the one in force at the time of the death of the predecessor in interest, which occurred on November 7, 1936?

Section 9 of Act No. 99 of 1925, as amended by Act No. 20, 1933, in its pertinent part provided:

"... Such taxes shall become due and payable *within one hundred and eighty days after the death of the predecessor in interest* ... If said taxes are not paid within the stated term of one hundred and eighty days, interest *at the rate of one (1) per cent for each month or fraction thereof* shall be charged and collected thereon, and the collector or other agent duly authorized by the Treasurer, shall proceed, after obtaining the written consent of the Treasurer, to collect said taxes, etc." (Italics ours.)

The above-cited § 9 was amended by Act No. 20 of November 21, 1941, thus:

"Such taxes shall become due and payable within the term of *ninety (90) days immediately following the date on which the Treasurer notifies the interested persons of the taxes corresponding to the inheritance* ... If said taxes are not paid within the aforesaid term of ninety (90) days, interest thereon shall be charged and collected at the rate of six (6) per cent per annum, and the collector, or other agent duly authorized by the Treasurer, shall proceed, after obtaining the written consent of the Treasurer, to collect said taxes ... " (Italics ours.)

By comparing the original Act with the amendment it will be seen that, according to the former, the inheritance tax was required to be paid within the 180 days following the date of the death of the predecessor in interest, with in-

terest thereon at 12 per cent per annum in case of delay in the payment; and that, according to the amendment, the payment must be made within the 90 days following the date on which the Treasurer notifies to the interested parties the amount of the tax, with interest thereon, at 6 per cent per annum in case of delay in the payment.

It is true that the Act in force at the time of the death of Mr. del Toro was Act No. 99 of 1925, as amended in 1933, which provided that the tax must be paid "within one hundred and eighty days after the death of the predecessor in interest," with interest thereon at 12 per cent per annum in case of delay. And that Act would undoubtedly have been the applicable statute if the events which gave rise to the litigation, ended by our decision of May 28, 1945, 65 P.R.R. 58, had not taken place. We deem it advisable to make a summary of the facts and antecedents of said case.

Mr. Del Toro died in Madrid on November 7, 1936. On October 6, 1937, the District Court of Humacao appointed a judicial administrator of his estate, since it was alleged that Mr. Del Toro was absent from the Island, his whereabouts being unknown, and that he had no legal representative in the Island. Attorney Monserrat, appointed by the heirs to claim and take possession of the estate held under judicial administration, submitted to the Treasurer the notification of the death of the decedent, together with a valuation of the estate amounting to $186,090 and as evidence of such death, an "Abridged certificate (*en relación*) regarding the death of the decedent." The Treasurer made a reassessment which amounted to $374,009.59, and imposed on each of the heirs a tax of $18,606.23, plus interest thereon at the rate of 1 per cent monthly from May 1, 1937, until fully paid. Feeling aggrieved by that ruling, the heirs petitioned the District Court of Humacao for an order directing the judicial administrator to appeal to the Tax Court, for which it would have been necessary to pay the sum with which the heirs

agreed, which amounted to $23,395. The heirs alleged that they lacked money in cash with which to make such payment and that the only properties available to them were those held in custody by the district court. The judicial administrator objected, on the ground that the death of the absentee had not been properly established, the court denied the petition, and the heirs were precluded from taking an appeal.

Upon learning of the petition of the heirs, the judicial administrator informed the Treasurer that the assets of the estate were "frozen" by order of the Federal Secretary of the Treasury; that in order to be entitled to file a declaration for inheritance tax purposes it was necessary to be in possession of the estate; that the attorney-in-fact was not empowered to file a declaration regarding an estate of which he did not hold possession, and which was in *custodia legis* and, furthermore, frozen. The attorney-in-fact of the heirs agreed with the contentions of the judicial administrator and requested the Treasurer to set aside all the proceedings previously taken, which said officer refused to do, insisting that the heirs should pay the tax. On petition of the heirs, the district court decreed the termination of the administration, and on July 6, 1943, the assets of the estate were delivered to the agent of the heirs. On August 3, 1943, the agent filed the notification of death and requested the Treasurer to fix the amount of the tax. A few days later the Treasurer returned the documents to the agent, informing him that the tax had already been liquidated on June 29, 1942, at the request of Attorney Monserrat. After the Treasurer had refused to reconsider his decision, the heirs appealed to the Tax Court; and upon the complaint filed by them being dismissed, the heirs instituted a proceeding for review in this Court. The questions raised were decided in the following manner:

1. The notification of the death submitted by Attorney Monserrat was not effective or binding on the heirs because,

as they were not in possession of the estate nor had charge of the distribution or division thereof, they were not bound to make such notification. (Section 5 of Act No. 99 of August 29, 1925, amended by Act No. 136 of May 6, 1939.) Since the estate was in *custodia legis* as property belonging to an absentee, the obligation to notify the death rested on the judicial administrator. It was an error to hold that the notification of death submitted by Attorney Monserrat was legally effective.

2. Since the estate was in *custodia legis,* held by a judicial administrator as property belonging to an absentee, and not by an executor or testamentary administrator, neither the heirs nor the Treasurer could, without the previous authorization of the court, sell the properties in order to raise the necessary funds to pay the inheritance tax. (Section 5A, Act No. 99 of 1925, as amended by Act No. 34 of 1935.)

3. The petition filed with the Treasurer on August 9, 1943, by the administrator of the estate, appointed by the heirs, should have been considered as the only petition legally submitted to the Treasurer for the liquidation of the inheritance tax.

4. The Treasurer, after receiving the notification of death submitted to him by the administrator appointed by the heirs did not comply with the provisions of § 6 of the Inheritance Tax Act, as amended by Act No. 20 of 1941, according to which the Treasurer was bound to make "a fair and proper appraisal" of the estate, informing the administrator of the result of such appraisal, and of the amount of the tax. The purpose of the Treasurer in so acting was to deprive the heirs of their right to appeal by reason of the expiration of the statutory period therefor.

5. The Treasurer should have received and considered the petition filed on August 9, 1943, by the agent of the heirs, as an original petition and proceeded to the appraisal of the estate and to the imposition of the tax, thus giving an

opportunity to the heirs to take an appeal to the Tax Court from his administrative decision, for, according to § 4 of Act No. 169 of 1943, the jurisdiction of that tribunal can not be invoked until "there has been a proper administrative decision in the matter on the part of the Treasurer of Puerto Rico according to law." Since there was no administrative decision of the Treasurer, the heirs were not entitled to appeal and, therefore, the complaint filed by them was premature. The case was remanded to the Tax Court with directions to dismiss the complaint for want of jurisdiction, without prejudice to any rights which the petitioner heirs might have to resubmit their petition to the Treasurer for the appraisal of the estate and the determination of the amount of the inheritance tax, and to take an appeal if they felt aggrieved by the administrative decision rendered by the Treasurer.

We shall now proceed to decide the question at issue herein. It is true that the Act in force at the time of the death of the decedent was Act No. 99 of August 29, 1925, as amended by Act No. 20 of April 27, 1933, § 9, *supra;* but it is also true that the only valid assessment of the tax to be paid in the instant case was not notified to the heirs until February 5, 1946. Before that time the heirs could not know the amount of the tax which they should pay. The Treasurer could not authorize the collection of the tax after the expiration of the term of 180 days following the death of the decedent, because it was not until February 5, 1946, that the taxpayers were notified of the appraisal made by the Treasurer. It was then that the taxpayers were in a position to apply to the courts for a review of the administrative decision of the Treasurer. Section 7 of said Act No. 99 of 1925, as amended by Act No. 72 of 1936, provided that "Within thirty days after the completion of said appraisal and assessment of taxes, any person or beneficiary affected thereby, may appeal therefrom to the Board of

Review and Equalization." On February 5, 1946, the date on which the heirs for the first time were notified of the appraisal and assessment made by the Treasurer, the Act in force was § 7 of Act No. 99 of 1925, as amended by Act No. 20 of November 21, 1941, *supra,* which provides:

"Section 7.—Whenever any person affected by the above-mentioned appraisal or assessment does not agree with any of them, or whenever for any reason he believes that he should not pay, in whole or in part, such inheritance tax based on said appraisal and assessment as he may be notified of by the Treasurer, and he may wish to appeal to the Court of Tax Appeals, he shall pay, within the ninety (90) days following the date on which the Treasurer notified him of such tax, the part thereof with which he agrees, and within the thirty (30) days following said payment he shall file his appeal against the part with which he does not agree by means of the complaint provided for in the Act creating said Court of Tax Appeals; *Provided,* That said court shall not acquire jurisdiction unless (1) the payment of the tax not protested shall have been made within the aforesaid term of ninety (90) days, and (2) the receipt for said payment, or a certified copy thereof, is made a part of the complaint."

We have already seen that § 9 of that same Act, as amended in 1941, *supra,* provides that the tax shall be paid "within the term of ninety (90) days immediately following the date on which the Treasurer notifies the interested persons of the taxes corresponding to the inheritance."

The heirs agreed to pay and did pay interest on the amount of the tax at the rate of 12 per cent per annum from the date of the death of the decedent until November 21, 1941, when the Act reducing the interest to 6 per cent per annum took effect. From that date until the date of payment, the taxpayer paid interest at the rate of 6 per cent per annum. The intervening taxpayers contend that they have complied with the provisions of the Act, and that the proceeding instituted by the Treasurer should be dismissed. In our judgment, their contention is correct.

The heirs are not at all liable for the delay in the payment of the tax which resulted from the judicial administration of the estate and from the fact that the estate was frozen during the emergency caused by the Second World War. Notwithstanding their freedom from liability, they have paid interest at the rate of 12 per cent per annum from the date of the death of the decedent to the date on which, by legal provision, the interest was reduced to 6 per cent per annum. During all that time—November 7, 1936, to November 21, 1941, 5 years and 14 days—the estate was under the custody of a judicial administrator and frozen by order of the Federal Government.

As soon as the judicial administration ended and the estate was delivered to the heirs, the latter, on August 3, 1943—when Act No. 20 of August 21, 1941, was already in force—submitted to the Treasurer the notification of death and requested the appraisal of the estate and assessment of the tax. The Treasurer, insisting on his erroneous conclusion that the notification made by Attorney Monserrat was valid, refused to accept the notification or to make the appraisal and assessment requested, thus attempting to deprive the taxpayers of their right to resort to the Tax Court. This made it necessary for this Court to remand the case to the Tax Court in order to protect the rights which the heirs might have. If the Treasurer had accepted the notification submitted to him on August 3, 1943, and had made the appraisal and assessment within the legal term, then the heirs could have paid the total amount of the tax without being compelled to pay any interest for the period from August 3, 1943, to February 28, 1946, the date on which the heirs were finally able to pay the tax. The Treasurer can not take advantage of the delay caused by either the judicial administration or the freezing of the estate, much less of his own error, in order to deprive the heirs of the benefits

of the Act in force at the time the heirs were legally enabled to comply with the law.

Whether or not the intervening heirs were bound to pay the amounts which they paid as interest, or whether or not they are entitled to claim the refund of these amounts, wholly or partially, are questions which cannot be considered by us, since they were not raised by the interveners or decided by the respondent tribunal.

The decision appealed from will be affirmed.